No. 89-376

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

LAWRENCE W. ERICKSON,

Plaintiff and Appellant,

-vs-

DAIRYLAND INSURANCE COMPANY,

Defendant and Respondent.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Bozeman,
The Honorable Joseph Gary, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert Kolesar, Bozeman, Montana

For Respondent:

Albert A. Frost, Bozeman, Montana

Submitted on Briefs: Nov. 21, 1989

Decided: January 18, 1990

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This appeal arises from an order by the District Court, Eighteenth Judicial District, Gallatin County, Montana, granting summary judgment in favor of defendant. Plaintiff appeals. We affirm.

The issues presented for our review are:

1. Did the District Court err in granting summary judgment in favor of defendant?

2. Did the District Court err in denying costs to defendant?

Mr. Erickson suffered injuries while riding his motorcycle in April 1988, in Bozeman, Montana. An automobile driven by Wanda Youngblood made a left turn in front of Mr. Erickson, striking him. Ms. Youngblood carried no liability insurance at the time. Mr. Erickson submitted a claim to his own insurance company, Dairyland Insurance Company (Dairyland), and it accepted liability. Dairyland paid Mr. Erickson $25,000 under the uninsured motorist provision, and also paid $5,000 for the loss of his motorcycle. Mr. Erickson demanded an additional $25,000 payment, contending that his policy provided coverage for his own bodily injuries. When Dairyland denied this claim, Mr. Erickson brought suit. Mr. Erickson moved for judgment on the pleadings, requesting court interpretation of his policy. Dairyland

moved for summary judgment on the issue of liability, which was granted by the District Court. From this judgment, Mr. Erickson appeals.

I

Did the District Court err in granting summary judgment in favor of defendant?

Summary judgment is only appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Rule 56(c) M.R.Civ.P. On appeal, this Court's standard of review is to determine if any genuine issues of material fact exist, which would preclude summary judgment. Kelly v. Widner (1989), 771 P.2d 142, 144, 46 St.Rep. 591, 593.

On October 15, 1987, Mr. Erickson purchased an insurance policy from Waite & Company, an agent of Dairyland, through Ms. Kimberly Jerome. On this insurance application, under item 5, "Coverage," two boxes are checked: the box indicating "Full Package" and the box indicating the motorcycle model group. Item 5 also states, "No coverage unless checked or premium shown below." The boxes indicating coverage for uninsured motorists and medical payments are not checked. The application specifies that the "Full Package" includes 25/50/5 bodily injury and property damage and comprehensive and collision. A physical damage deductible amount was

filled in at $250. Mr. Erickson paid the total premium amount of $336.

The application contained an "Uninsured Motorists Coverage Rejection Statement," which was left unsigned by Mr. Erickson. Mr. Erickson was subsequently billed for uninsured motorist coverage. He paid the additional premium, thereby obtaining the uninsured motorist coverage.

Mr. Erickson was issued a policy entitled "Plain Talk Motorcycle Policy," with a declarations page. The declarations page lists coverages and limits of liability, and states, "We insure you only for the vehicle(s) described on this page, and only for those coverages which are shown below. The liability is limited by the terms of this page." Mr. Erickson's coverage is then listed as bodily injury liability, excluding passenger coverage; property damage liability; uninsured motorist; comprehensive; and collision. The limits of liability on each item are specified. The declarations page is expressly made a part of the policy.

The policy itself is divided into ten sections, as follows:

    I. Definitions
   II. Insuring Agreement
 III. Motorcycles We Insure
  IV. What to do when an Accident Happens

4

V.    Liability Insurance

VI.   Medical Expense Insurance

VII.  Uninsured Motorist Insurance

VIII. Collision Insurance

IX.   Comprehensive Insurance

X.    General Policy Provisions

The first page of the policy states:

> Insuring Agreement
> Upon your payment of the premiums, we agree that this policy provides the various kinds of insurance you have selected as shown on the declarations page. The declarations page is a part of this policy. (Emphasis in original.)

Under Part V, "Liability Insurance," the policy states:

> We promise to pay damages for bodily injury or property damage for which the law holds you responsible because of a motorcycle accident involving a motorcycle we insure. (Emphasis in original.)

Under Part VI, "Medical Expense Insurance," the policy states,

> We promise to pay medical expenses for your bodily injury, sickness, disease or death suffered in a motorcycle accident while occupying a motorcycle or from having been struck by a motor vehicle. We'll pay the medical expenses incurred within one year from the date of the motorcycle accident, within the limits and subject to a $50 deductible amount applicable to each person per accident. (Emphasis in original.)

5

Mr. Erickson was also issued five endorsements with this policy, one of which was a "Named Insured Exclusion Endorsement." That endorsement stated:

This endorsement modifies <u>your</u> policy in the following way:

> LIABILITY INSURANCE
>     The liability insurance provided by this policy doesn't apply to injuries to the person named on the declarations page. It doesn't apply to the husband or wife of that person if they are living in the same household.

An insurance policy is subject to the general rules of contract law. Hildebrandt v. Washington Nat. Ins. Co. (1979), 181 Mont. 231, 234, 593 P.2d 37, 39. When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible. Section 28-3-303, MCA. A written contract supersedes all oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument. Section 28-2-904, MCA. Whenever the terms of an agreement have been reduced to writing by the parties, it is considered as containing all those terms. Section 28-2-905(1), MCA.

Mr. Erickson contends that the language of the policy is ambiguous and should be construed against the drafter, Dairyland, to provide coverage for his bodily injuries. He contends the policy does not adequately differentiate between

6

different types of bodily injury. He contends that his coverage for "bodily injury liability" should include all bodily injury.

The District Court determined that the language of the policy was clear and unambiguous, and that by its language the bodily injury liability coverage which Mr. Erickson purchased only covered bodily injury damage for which Mr. Erickson could be held legally liable; it did not include coverage for Mr. Erickson's own bodily injuries. The court determined Mr. Erickson did not purchase medical expense coverage, which would have covered his own injuries. The court also considered depositions of Mr. Erickson and Ms. Jerome. The District Court granted summary judgment in favor of Dairyland on the issue of liability, concluding that no genuine issues of material fact existed.

The plain language of the declarations page which is part of the policy, is not ambiguous in stating that Mr. Erickson's coverage was for "bodily injury liability." Reference to the "Liability" section of the policy further clarifies this coverage. It states, "We promise to pay damages for bodily injury. . . for which the law holds you responsible . . . " Under the definitions section the policy defines "damages" as the "cost of compensating those who suffer bodily injury . . ." Additionally, the commonly understood meaning of "liable" is "[b]ound or obliged in law

7

or equity; responsible" Black's Law Dictionary 1060 (4th Ed. 1968). "In interpreting and applying insurance contracts, the common rather than technical usage and meaning of definitional terms and policies should be used." Bauer Ranch v. Mountain W. Farm Bur. Mut. Ins. (1985), 215 Mont. 153, 156, 695 P.2d 1307, 1309. "If the language is unambiguous, and subject to only one meaning, there is no basis for the interpretation of policy coverage under the guise of ambiguity." Bauer Ranch, 695 P.2d at 1309, citing Nelson v. Combined Ins. Co. of America (1970), 155 Mont. 105, 467 P.2d 707. We conclude that the policy language was unambiguous in covering only bodily injury liability, which does not include Mr. Erickson's own injuries. Mr. Erickson's attempt to create an ambiguity is unpersuasive.

Mr. Erickson also contends that the insurer failed in its duty to define any limitations or exclusions in clear and explicit terms. Mr. Erickson misapplies this requirement since the present case does not involve an exclusion. The insurance company is not required to expressly exclude coverage which is not purchased. Mr. Erickson's argument in this regard also fails since he received from Dairyland the named insured exclusion endorsement, which expressly informed him that coverage for his own bodily injuries was excluded.

8

Mr. Erickson also urges that his election to purchase "Full Package" coverage led him to believe this included coverage for his own medical expenses.

> However, intent of the parties is only looked to when the agreement in issue is not clear on its face. Glacier Campground v. Wild Rivers, Inc. (1979), 182 Mont. 389, 394, 184 Mont. 543, 547, 597 P.2d 689, 692. Where the contractual language is clear and unambiguous on its face, it is this Court's duty to enforce the contract as drafted and executed by the parties. Wortman v. Griff (1982), 200 Mont. 528, 536, 651 P.2d 998, 1002.

Monte Vista Co. v. Anaconda Co. (Mont. 1988), 755 P.2d 1358, 1362, 45 St.Rep. 809, 814. As previously discussed, the language of the insurance contract is unambiguous and is enforceable as drafted.

We conclude that Mr. Erickson failed to present any genuine issues of material fact regarding the extent of his insurance coverage. The District Court was correct in determining that according to the plain language of the policy, Mr. Erickson was not covered for his own medical expenses, and that he had failed to present any genuine issues of material fact in this regard. We affirm the District Court's grant of summary judgment in favor of Dairyland.

II

Did the District Court err in denying costs to defendant?

Defendant submitted a verified memorandum of costs and disbursements for a total amount of $432.60. This amount included deposition costs of Kimberly Jerome and Lawrence Erickson. The record contains no objection to these costs by plaintiff. The District Court denied these costs, however, without explanation. On appeal defendant contends these expenses should have been allowed, citing Frigon v. Morrison-Maierle, Inc. (Mont. 1988), 760 P.2d 57, 64, 45 St.Rep. 1344, 1353; Roy v. Neibauer (1981), 191 Mont. 224, 227-28, 623 P.2d 555, 557.

Costs are generally allowable to the prevailing party pursuant to Rule 54(d), M.R.Civ.P., unless the court directs otherwise, except where expressly provided by statute. Carroccia v. Todd (1980), 189 Mont. 172, 178, 615 P.2d 225, 228.

In the present case, costs to defendant are statutory pursuant to § 25-10-102, MCA, which provides costs to defendant upon a judgment in his favor in actions mentioned in § 25-10-101, MCA. From the complaint of the plaintiff, it does not appear that this claim falls within any of the cases enumerated in § 25-10-101, MCA. The District Court may in its discretion choose to allow costs or not allow costs. Section 25-10-103, MCA. In the absence of any showing of abuse of discretion by the District Court, we sustain the court's ruling. Swenson v. Buffalo Bldg. Co. (Mont. 1981),

635 P.2d 978, 985, 38 St.Rep. 1588, 1596.  We affirm the District Court's denial of costs to defendant.

Affirmed.

_____
Justice

We Concur:

_____
John Conway Harrison

_____
Diane G. Barz

_____
John C. Sheehy

_____
F. C. McDonough
Justices