

DA 13-0374

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 7

GARY BATES,

        Plaintiff and Appellant,

  v.

SCOTT ANDERSON, MICHAEL BLIVEN,
and ANDERSON LAW OFFICE, PLLC,
and ANDERSON and BLIVEN, PLLC,

        Defendants and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District, In and For the County of Flathead, Cause No. DV 08-1498C Honorable Heidi Ulbricht, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

            Larry Jent; Williams & Jent, PLLP; Bozeman, Montana

        For Appellees:

            J. Daniel Hoven, W. John Tietz; Browning, Kaleczyc, Berry & Hoven, P.C.; Helena, Montana

                         Submitted on Briefs: November 20, 2013
                                    Decided: January 13, 2014

Filed:

                            _____
                                        Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Gary Bates (Bates) appeals from the orders of the Eleventh Judicial District Court, Flathead County, denying his motion to withdraw or amend his admissions and granting the defendants' motion for summary judgment. We reverse and remand.

¶2 A restatement of the dispositive issue on appeal is:

¶3 *Did the District Court abuse its discretion in denying Bates's motion to withdraw or amend his deemed admissions under Rule 36(b), Montana Rules of Civil Procedure?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4 In September 1999, Bates, a Michigan resident, visited Montana for a hunting trip organized by Koocanusa Outfitters. Koocanusa Outfitters was owned by Neven and Debrah Zugg. On September 18, 1999, Bates was injured in a one-vehicle accident near Libby, Montana. George Hogan, one of the Zuggs' employees, was the driver of the vehicle. Hogan was legally intoxicated at the time of the accident and ultimately pleaded guilty to reckless driving.

¶5 On September 25, 1999, Bates entered into a fee agreement with the Anderson Law Office, PLLC[1] (Anderson Law Firm) to represent him for injuries arising out of the accident. On May 5, 2000, upon advice of counsel, Bates entered into a settlement with Hogan's insurer and signed a release with the following provision:

> I release and forever discharge George Hogan [and] their [sic] principals, agents and representatives from any and all rights, claims, demands and damages of any kind, known or unknown, existing or arising in the future, resulting from or related to bodily injury arising from an accident that occurred

---

[1] Anderson Law Office, PLLC was later renamed Anderson & Bliven, PLLC.

2

on or about the 18 day of September, 1999, at or near Libby, MT.

¶6     On August 22, 2002, the Anderson Law Firm filed a complaint on behalf of Bates against Neven Zugg, Debrah Zugg, Koocanusa Outfitters, and a number of the Zuggs' other business entities and insurers (Zugg Defendants). On July 27, 2005, the Anderson Law Firm filed a second amended complaint. The second amended complaint set forth nine claims, including claims for negligence, vicarious liability, joint and several liability/corporate veil, loss of consortium, breach of contract and bad faith, and a claim under the Montana Dram Shop Act against the bar that had served Hogan. The bar was owned by the Zuggs.

¶7     The Zugg Defendants filed a motion to dismiss five of the nine claims based on the language of the release signed by Bates, and on December 22, 2005, the Nineteenth Judicial Court, Lincoln County, entered an order dismissing the five claims. Bates's dram shop claim and claims for loss of consortium and joint and several liability/corporate veil were not dismissed, and he ultimately settled these claims in 2011 after retaining other counsel.

¶8     On December 18, 2008, Bates commenced the present action by filing a complaint against the Anderson Law Firm, Scott Anderson, and Michael Bliven (Anderson Defendants). Bates alleged that the Anderson Defendants committed legal malpractice when they advised Bates to sign the release, and that he was damaged in the loss of his causes of action because of their breach of duty.

3

¶9    On September 18, 2011, Bates settled his remaining claims with Elk Mountain Outfitters/Elk Mountain Outfitters, LLC and alter egos Neven and Debrah Zugg, and with Koocanusa Outfitters/Koocanusa Outfitters, LLC and Neven and Debrah Zugg in two separate agreements.  Each settlement provided for a partial judgment of $500,000 and included a covenant not to execute against the Zuggs' personal assets.  The District Court approved the settlements in December 2011.  Because the Zuggs' insurer, Colorado Western Insurance Company, had been declared insolvent in 2005, the Montana Insurance Guaranty Association stood in the shoes of Colorado Western.  On February 3, 2012, Bates executed a release and settlement agreement with the Montana Insurance Guaranty Association in consideration for the sum of $300,000.

¶10   On January 9, 2012, the Anderson Defendants served discovery requests on Bates.  The following were among the requests for admission: "Please admit that you have not experienced any monetary damages as a result of the [c]ourt's dismissing the vicarious liability claims against the Zugg Defendants," and "that the settlements you executed . . . fully compensates [sic] you for all damages resulting from the automobile accident."

¶11   One month later, Bates's counsel requested an additional 30 days in which to respond to the discovery requests.  The Anderson Defendants agreed to the extension, making the new deadline for responses March 9, 2012.  On April 9, 2012, Bates's counsel requested an additional 30-day extension.  The Anderson Defendants agreed to the extension for the interrogatories and requests for production, but refused to grant an extension for the requests for admission.  Bates subsequently served verified discovery responses on May 1, 2012.  At no time did Bates seek leave from the District Court to

4

extend the deadlines or give notice to the court of the parties' agreements to extend the statutory discovery deadlines. Bates conceded that his responses to the requests for admission were not timely.

¶12 The Anderson Defendants moved for summary judgment on July 31, 2012, relying in significant part on the argument that the requests for admission had not been timely answered and were deemed admitted pursuant to M. R. Civ. P. 36 (Rule 36). Bates filed a motion to withdraw or amend his admissions on August 21, 2012. The District Court determined that the matters set forth in the requests for admission were automatically deemed admitted and were conclusively established given Bates's untimely response. The court employed the two-prong test of Rule 36, and concluded that while granting Bates's motion would subserve the presentation of the merits of the case, it would prejudice the Anderson Defendants. Thus, the court denied Bates's motion. On the same day, the court granted the Anderson Defendants' motion for summary judgment. The court concluded that there were no genuine issues of material fact because Bates provided no evidence of uncompensated damages and because his failure to respond to the requests for admission established that he had experienced no monetary damages and had been fully compensated for all damages resulting from the automobile accident.

¶13 In June 2013, Bates filed his notice of appeal. On appeal, Bates alleges the requests for admission were outside the proper scope of Rule 36. Alternatively, he contends that the District Court incorrectly determined that the Anderson Defendants had met their burden of proving prejudice because the prejudice inquiry should focus on

whether the party will suffer prejudice in proving facts at trial. Bates also argues that there was a factual dispute regarding whether he had been "fully compensated."

¶14 The Anderson Defendants counter that the requests for admission were within the permissible parameters of Rule 36. They argue the District Court did not abuse its discretion in determining they would be prejudiced by Bates's withdrawal of his admissions, and that it was within the court's discretion to deny Bates's motion even if a withdrawal would not have prejudiced the Anderson Defendants. They further argue that the District Court correctly determined that Bates had no uncompensated damages.

¶15 In his reply brief, Bates argues that the cases the Anderson Defendants cite in their brief were decided under the "old" Rule 36. Bates argues that a district court's discretion on motions to withdraw or amend admissions should not be unfettered.

## STANDARD OF REVIEW

¶16 We review a ruling on a pretrial discovery matter for an abuse of discretion. *Spooner Constr. & Tree Serv., Inc. v. Maner*, 2000 MT 161, ¶ 24, 300 Mont. 268, 3 P.3d 641 (citation omitted).

¶17 We review a district court's legal conclusions for correctness. *Williams v. Bd. of Co. Commrs.*, 2013 MT 243, ¶ 23, 371 Mont. 356, 308 P.3d 88.

## DISCUSSION

¶18 *Did the District Court abuse its discretion in denying Bates's motion to withdraw or amend his deemed admissions under Rule 36(b), Montana Rules of Civil Procedure?*

¶19 Rule 36(a)(1) provides that "[a] party may serve on any other party a written request to admit" the truth of certain matters. If the receiving party fails to respond to the

6

request within 30 days, or within such other time as the court may allow, the matter is deemed admitted. Rule 36(a)(3). Once a matter is admitted, it "is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Rule 36(b). "[T]he court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Rule 36(b). This is the first time we have interpreted Montana's new Rule 36, which was enacted in 2011. Because the new Rule 36 is modeled on Rule 36 of the Federal Rules of Civil Procedure,[2] federal authority on the issue is instructive. *See Muri v. Frank*, 2001 MT 29, ¶ 12, 304 Mont. 171, 18 P.3d 1022 ("Montana's Rule 60(a) is modeled on Rule 60(a) of the Federal Rules of Civil Procedure; thus, we look to interpretation of the Federal Rules for guidance.").

¶20 Bates first argues that these admissions improperly sought to eliminate the legal element of damages. The Anderson Defendants counter that the requests for admission were within the permissible parameters of the rule because an issue of fact relevant to a party's claim properly may be the subject of a request for admission, even if the request for admission seeks to eliminate factual issues that go to the necessary elements of a claim. We agree that the requests for admission were not objectionable. Rule 36 provides that a request may be made to admit any matters within the scope of discovery

---

[2] The only difference between Montana's Rule 36 and the federal rule is that Montana Rule 36(a)(3) includes the following phrase: "unless the court shortens the time, a defendant shall not be required to serve answers or objections before the expiration of 45 days after service of the summons and complaint upon that defendant."

relating to statements or opinions of fact or of the application of law to fact. Fed. R. Civ. P. 36(a) advisory comm. n. (1970 amendments) (requests for admissions of law related to the facts of the case are proper); *See W. Bay Builders, Inc. v. U.S.*, 80 Fed. Cl. 700, 703 (2008) ("[A] request for admission is 'not objectionable even if [it] require[s] opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case. Requests to admit pure conclusions of law unrelated to facts in the case are objectionable.") (citation omitted). No issue or fact is specially immune from a request for admission. *Hersch v. Commr.*, 63 T.C.M. (CCH) 2763, 1992 Tax Ct. Memo LEXIS 256, 10 (1992) ("There is no basis in the rule for these comments [that Rule 36 of the Federal Rules of Civil Procedure is not intended to be used to cover the entire case] and no discernible reason for such a limitation . . . . It was precisely for the purpose of forcing the parties to eliminate such [a central] issue unless there is some substantial reason [for] supposing that it might be resolved in their favor that Rule 36 was adopted.") (citations omitted). Because we conclude the requests for admission were within the proper scope of Rule 36, we next consider whether the District Court properly applied Rule 36's two-prong test.

¶21 With regard to the first Rule 36(b) factor, the District Court found that "[g]ranting Plaintiff's motion to amend or withdraw his admissions to deny the matters therein would subserve the presentation of the merits of the case since the admissions clearly eliminate the allegation of damages in the Complaint," and that "[t]he first part of the two-part test . . . favors permitting Bates to amend the admissions." We agree. The admissions at issue conceded core elements of Bates's case, and allowing the admissions to be

8

withdrawn would subserve the presentation of the merits of the action. Indeed, once the admissions were deemed admitted, the District Court granted summary judgment in favor of the Anderson Defendants, precluding adjudication on the merits of Bates's claim.

¶22    The second Rule 36(b) factor obligates the party who obtained the admission to prove that withdrawal of the admission would prejudice the party's case. *Hadley v. U.S.*, 45 F.3d 1345, 1348 (9th Cir. 1995). The District Court concluded that the Anderson Defendants would be prejudiced because they had relied on the admissions as the basis for their motion for summary judgment. However, mere inconvenience does not constitute prejudice for the purpose of Rule 36. "The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission now has to convince the jury of its truth. Something more is required." *Raiser v. Utah Co.*, 409 F.3d 1243, 1246 (10th Cir. 2005) (quotation omitted). "The prejudice contemplated by Rule 36(b) . . . relates to the difficulty a party may face in proving its case, *e.g.*, caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted." *Raiser*, 409 F.3d at 1246 (quotation omitted). "In particular, 'preparing a summary judgment motion in reliance upon an erroneous admission does not constitute prejudice.'" *Raiser*, 409 F.3d at 1246 (quotation omitted); *FDIC v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994); *Conlon v. U.S.*, 474 F.3d 616, 624 (9th Cir. 2007) ("We agree with the other courts that have addressed the issue and conclude that reliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice.") (internal citations omitted).

9

¶23    Nothing in the record shows that the Anderson Defendants suffered prejudice sufficient to bar amendment of Bates's admissions. Though the responses were untimely and "no litigant should ignore deadlines established by applicable rules, . . . more than a failure to meet deadlines is required to deny a party relief from an admission." *Raiser*, 409 F.3d at 1247. In this case, Bates provided the responses well before the close of discovery, the District Court had not yet entered a scheduling order, and no trial date had been set. *But see 999 v. C.I.T. Corp.*, 776 F.2d 866, 869-70 (9th Cir. 1985) (The district court did not abuse its discretion in finding prejudice when the moving party sought withdrawal in the middle of trial and the other party had nearly rested its case.); *Conlon*, 474 F.3d at 624 (The district court did not clearly err in finding that withdrawal of the deemed admissions would prejudice the government when trial was imminent and "the government relied on the admissions for a total of two and a half months, through the discovery and dispositive motion cut-off dates, with no indication that Conlon intended to file a motion to withdraw his admissions."). Without more, any prejudice to the Anderson Defendants occasioned by preparing their motion for summary judgment based on the admissions was insufficient to foreclose withdrawal or amendment of the admissions. The Anderson Defendants have failed to prove prejudice, and thus, the second prong of the Rule 36 test was not met.

¶24    The Anderson Defendants argue that it was within the discretion of the District Court to deny Bates's motion to withdraw his admissions even if Bates did show that the Anderson Defendants would not be prejudiced by the withdrawal. They argue that a district court has the discretion to deny a request for leave to withdraw or amend an

10

admission even when the two Rule 36(b) factors are met because the text of Rule 36 is permissive. The District Court in *Conlon* addressed this argument, stating:

> Although the rule itself is permissive, the Advisory Committee clearly intended the two factors set forth in Rule 36(b) to be central to the analysis. Accordingly, a district court's failure to consider these factors will constitute an abuse of discretion. *See Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1313 (8th Cir. 1983) ("[T]he district court erred in not considering the factors set out in [R]ule 36(b)."). However, in deciding whether to exercise its discretion when the moving party has met the two-pronged test of Rule 36(b), the district court may consider other factors, including whether the moving party can show good cause for the delay and whether the moving party appears to have a strong case on the merits.

*Conlon*, 474 F.3d at 625.

¶25 District courts have discretion in ruling on motions to withdraw or amend admissions, but such discretion is not unfettered. *See Perez v. Miami-Dade Co.*, 297 F.3d 1255, 1265 (11th Cir. 2002). Like other courts, "we read Rule 36(b) as granting a district court discretion but then specifying exactly how that discretion is to be exercised." *Perez*, 297 F.3d at 1265; *See Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1248 (9th Cir. 1981) ("A per se rule that the district court must permit withdrawal of an admission which relates to an important or dispositive matter is inappropriate . . . . [However,] [i]n a proper case, of course, such as when an admission has been made inadvertently, Rule 36(b) might well require the district court to permit withdrawal."); *Mid Valley Bank v. N. Valley Bank*, 764 F. Supp. 1377, 1391 (E.D. Cal. 1991) ("[A]lthough the motion is, as the parties acknowledge, directed to the sound discretion of the court, . . . the discretion should not be exercised in terms of the defaulting party's excuses, but in terms of the effect upon the litigation and prejudice to the resisting party."); *In re Durability Inc.*, 212

11

F.3d 551, 556 (10th Cir. 2000) ("The court's focus must be on the effect upon the litigation and prejudice to the resisting party rather than . . . on the moving party's excuses for an erroneous admission.") (internal citation and quotation marks omitted). In this case, the District Court abused its discretion when it rejected the motion to withdraw or amend the admissions premised solely upon an erroneous interpretation of the type of prejudice contemplated by Rule 36(b).

¶26    Notwithstanding the result we reach here, we agree with the *Conlon* court that some discretion is left to the district court even where the Rule 36(b) factors are met. Had the court concluded that Bates's dilatoriness caused undue delay in the pre-trial proceedings and/or constituted an abuse of the judicial process, and denied his motion to withdraw or amend his admissions on these grounds, we would be constrained to take these considerations into account in determining whether the court's action constituted an abuse of discretion. However, because the court here erroneously relied on the Anderson Defendants' filing of the motion for summary judgment as the sole basis for its finding of prejudice, we conclude that the court abused its discretion.

¶27    Based upon the foregoing, we conclude the District Court abused its discretion by refusing to allow Bates to withdraw or amend his admissions. We therefore remand for reconsideration of the Anderson Defendants' motion for summary judgment following the court's revision of its order on Bates's motion to withdraw or amend. We decline to reach the other issues Bates raises on appeal, as resolution of these issues by the District Court stemmed directly from its erroneous resolution of issue one.

**CONCLUSION**

¶28   For the foregoing reasons, we reverse and remand for further proceedings in accordance with this opinion.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER

Justice Jim Rice, dissenting.

¶29   The Court's general analysis about Rule 36 is correct, but, ultimately, I believe the facts require a different conclusion regarding prejudice, and would affirm.  Bates first missed the agreed-upon discovery deadline on March 9, 2012.  Bates did not act promptly regarding this violation, waiting until April 9 to request another extension from the Defendants.  The Defendants agreed only to extend the deadline with regard to interrogatories and requests for production, but refused with regard to the requests for admission.  Had Bates then promptly moved to withdraw his admissions, the Court's analysis would apply, and withdrawal would be favored.  However, Bates did nothing.  He sought no relief from the District Court.  Over three more months later, on July 31, Defendants moved for summary judgment, citing the admissions—which by then had been pending for almost five months without any action by Bates.  Still, Bates did not act promptly.  Another three weeks passed before Bates moved to withdraw his admissions, on August 21, 2012.

13

¶30 In its order denying withdrawal of the admissions, the District Court first found that "[a]t no time did Plaintiff's counsel file a notice with the Court of the parties' agreements to extend the statutory discovery limits or seek the Court's leave to extend the deadlines," and noted that Plaintiff had conceded his responses were not timely. In its conclusions of law, the District Court concluded that "[w]hen Defendants did not agree to more time, Plaintiff was required by [M. R. Civ. P. 36(a)(3)] to seek an order from the Court. Plaintiff did not do this and did not answer the requests for admission until two months beyond the first extension agreed to by the Defendants, four months after first being served with the requests." It further reasoned that "Plaintiff never asked the Court for leave to file a late response to the requests for admission and did not seek to withdraw or amend his admissions until, five months after they had been deemed admitted, Defendants moved for summary judgment. Defendants had a right to rely on the matters in those requests being deemed conclusively established and did so. . . ." The court noted that the Plaintiff's "belated" actions forced the Defendants to defend against Plaintiff's motion to withdraw admissions at a time when, five months later, it was already litigating summary judgment in reliance, to which they were entitled, upon the admissions.

¶31 I acknowledge *Raiser*'s holding that the mere filing of a summary judgment motion by an opposing party in reliance on an erroneous admission does not constitute the prejudice necessary to support denial of a motion to withdraw the admissions. *See* Opinion, ¶ 22. However, in my view, more is at issue here. Bates' initial failure to answer the requests for admissions, followed by his continuing dilatoriness, shifted this litigation to a new course—one based upon his admissions to key questions—for a

14

lengthy period of time. Bates did not seek relief from the District Court when the Defendants refused to agree to extend the deadline. He waited and did not seek withdrawal until over five months after missing the deadline, and then only after the Defendants had moved for summary judgment. I would not conclude that withdrawal of the admissions was required under these circumstances. Bates' lack of diligence wasted extensive time of the parties and the judiciary. It sidetracked the litigation for almost six months. I believe this case is closer to *Conlon*, where the consequences of a two-and-a-half-month delay in seeking withdrawal were significant enough to warrant denial.

¶32     I would conclude that the District Court did not abuse its discretion and affirm.


/S/ JIM RICE